UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| DIANA SMITH | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.:_____ |
| | ) | Jury Trial Demanded |
| | ) | |
| COMPASS HEALTH BRANDS CORP. | ) | |
| | ) | |
| | ) | |

### COMPLAINT & DEMAND FOR JURY TRIAL

1.      Plaintiff DIANA SMITH files the instant complaint against Defendant COMPASS

HEALTH BRANDS CORP. and states as follows, while demanding a jury trial.

### PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff, DIANA SMITH, at all times relevant herein, resided at 37 Collettes

Grove Road, Derry, New Hampshire 03038.

3.      Defendant COMPASS HEALTH BRANDS CORP. is a corporation organized and

existing under the laws of the State of Delaware, with its principal place of business in

Middleburg Heights, Ohio.  At all relevant times, Defendant COMPASS HEALTH

BRANDS CORP. was engaged in the design, manufacture, marketing, distribution and

sale of four-wheeled walkers, including the Carex Step N' Rest at issue.  As Defendant

claims on its marketing materials, "Carex Health Brands is a wholly-owned subsidiary of

Compass Health Brands."

4.      This Court has personal jurisdiction over Defendant COMPASS HEALTH

BRANDS CORP., which conducts business in New Hampshire through its actions and

through the joint actions of its subsidiary companies and agents, and causes its products to be marketed, distributed, sold and used within the State of New Hampshire, *including but not limited to*, the Carex Step N' Rest walker at issue in this Complaint. Defendant COMPASS HEALTH BRANDS CORP. derives significant revenue from its activities and the sale of its products in this state. Defendant COMPASS HEALTH BRANDS CORP. reasonably anticipates being hailed into a New Hampshire court and has consented to the jurisdiction of this Court.

5.      Federal diversity in this Court is proper under 28 U.S.C. § 1332 because Plaintiff is a citizen of New Hampshire, a different state than Defendants' place of incorporation and headquarters, and the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper within this District because the events giving rise to this action happened in or are closely related to this District.

## JURY TRIAL DEMANDED

7.      Plaintiff demands a trial by jury on each of the causes of action pleaded herein.

## FACTS AND ALLEGATIONS

8.      At all times pertinent, the Defendant was in the business of designing, testing, manufacturing, and selling various health and mobility-related products such as the Carex Step N' Rest at issue here.

9.      The Defendant manufactured, marketed, and sold the subject Carex Step N' Rest walker knowing their design was defective, not reasonably safe, and unreasonably dangerous when put to its reasonably anticipated use.

10.     On February 28, 2021, at approximately 8:00 p.m., DIANA SMITH was sitting on her Carex Step N' Rest walker in front of the refrigerator in her kitchen when, without warning, the right front wheel of her walker let go causing her to crash to the ground landing on her left side.

11.     Ms. Smith weighed approximately 185 pounds at the time of the incident, well within the weight limits.  In all other regards she was using the product at issue in a reasonably anticipated or intended manner.

12.     The Derry Ambulance was dispatched to her home.  DIANA SMITH was then transported to Parkland Medical Center where she was admitted and diagnosed with a left humerus fracture, a left hip contusion, as well as contusions from her head all the way down to her toes on her left side.

13.     In Early 2020, a wheel fell off of the first Carex Step N' Rest that DIANA SMITH owned.  Her daughter called Carex to order a replacement part, but Carex said they would send her a new walker, which was the walker at issue.

14.     After the incident at issue, the family again contacted Carex regarding the broken wheel, and Carex again sent them a replacement product.  This third Carex Step N' Rest walker remains in a box.

15.     There have been a litany of other similar incidents involving similar defects in this same product across the country that have led to injury.  Carex knew and/or should have known of these other similar incidents, which include approximately twenty complaints publicly available on the MAUDE database.  Plaintiff incorporates each of these complaints by reference, which include but are not limited to the following:

    A.  July 10, 2017, complaint from law firm regarding a consumer who sustained injuries while using the Carex walker

3

B. July 19, 2017, complaint that reporter's mother almost died while using the Step N Rest rollator as a result of the wheel falling off.

C. October 11, 2017, complaint that the user fell and hit against the wall and suffered serious injuries after the Step N Rest rollator broke after user sat on it.

D. November 7, 2017, complaint that the fight front wheel broke when the user sat down on her Carex rolling walker, which led to a fractured shoulder, rehab, and then hospice care.

E. May 4, 2018, complaint that a wheel came off the Carex Step N Rest causing user to fall and hit her head on the concrete.  She suffered a brain bleed that sent her to the ICU for four days.

F. August 4, 2018, complaint that a user suffered a broken femur as a result of the leg breaking on the Carex walker.

G. November 25, 2018, complaint that the wheel came off the Carex Step N Rest rollator causing her to fall backwards, which led to bleeding and swelling.

H. January 14, 2019, complaint that the back right leg on the Carex rollator broke while the user was sitting on it in the kitchen, causing her to hit her right eye socket on the kitchen table and suffer serious injury.

I. February 22, 2019, complaint that the left front wheel broke on the Carex Step N Rest rollator after using stepped off a curb, which caused the user to break her right shoulder.

J. May 28, 2019, complaint that the left front wheel fell off the Carex Step N Rest walker as she was walking to the kitchen table, which caused her to fracture her right shoulder.

K.  September 3, 2019, complaint that the leg of the Carex rolling walker broke off without warning during regular use.  The report reads in part:  "The break is quite dramatic and you will be alarmed that something like this could happen. I must stress that I was using the walker in a completely normal fashion.  I am (redacted) and of normal weight.  I am (redacted) and need a walker to ambulate.  By definition this product would be used by such a person with the recognition that a failure of the product would likely cause serious injury.  I wrote to Carex customer service including a description of the event and photographs of the broken unit.  I expressed my concern that there may be some design or manufacturing defect and invited them to analyze the breakage to see if there was an explanation.  I also asked if they would replace the item. They had a rather curt and unsympathetic response that the unit was out of warranty so they were not going to do anything.  They had no interest in looking at the unit…I would ask you to investigate this.  For all I know this is a frequent occurrence or something you have already investigated.  I fear if I don't speak up someone may be seriously injured."

L.  September 28, 2019, complaint that the end-user was sitting on her Carex rollator cleaning out her refrigerator when the right rear wheel snapped and broke off.  This caused her to be thrown to the floor so hard that she lost consciousness.  She was diagnosed with right clavicle fracture, right subdural hematoma, and right front subarachnoid hemorrhage.

M.  September 18, 2020, complaint that the front wheel broke off of the Carex rollator when user was sitting on it, which caused her to fall on and fracture her shoulder and receive a cut on her eye.

N. March 22, 2021, complaint that the wheel on the Carex rollator shot off when

user was sitting on the device in the kitchen, causing her to suffer multiple

serious injuries.  This appears to be related to the incident at issue here.

O. April 16, 2021, complaint that both the wheeler and the handlebar came off her

Carex walker, which almost caused her to suffer serious injury.  The report

reads in part: "Caller wants the fda to investigate the durability and quality of

these walkers as they can cause serious injuries to end users."

16. As a result of the design and/or manufacturing defects set forth herein, the safety

risks of the subject Carex Step N' Rest outweigh its benefits.

17. The Defendant drafted and distributed an Assembly/Installation Manual for the

subject Carex Step N' rest that failed to warn of the dangers associated with the product.

18. The conduct of Defendant was wanton and showed conscious disregard for the

safety of others, including Plaintiff DIANA SMITH, and further put profit over safety,

justifying the imposition of enhanced compensatory damages.

19. Prior to the incident at issue, the subject Carex Step N' Rest walker that injured

the Plaintiff was completely designed, manufactured, constructed, installed, and finished.

20. Plaintiff sustained damages including, but not limited to: disability, disfigurement,

loss of a normal life, pain and suffering, interference with his employment, loss of

financial gains he otherwise would have obtained, lost wages, diminishment of his earning

capacity, and medical expenses, loss of enjoyment of life, each of which will continue in

the future, all to her damage.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Strict Products Liability – Design Defect)**

21.     Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

22.     Plaintiff brings this strict liability claim against Defendant for defective design.

23.     At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Carex Step N' Rest walker, which is defective and unreasonably dangerous to consumers, users and other persons coming into contact with them, including Plaintiff, thereby placing Carex products into the stream of commerce. These actions were under the ultimate control and supervision of Defendant.

24.     At all times relevant to this litigation, Defendant designed, researched, developed, formulated, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold and distributed the Carex Step N' Rest used by Plaintiff as described throughout.

25.     At all times relevant to this litigation, Defendant's Carex Step N' Rest walker was manufactured, designed and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by the public, and, in particular, Plaintiff.

26.     At all times relevant to this litigation, Defendant's Carex Step N' Rest walker reached its intended consumer and/or user, DIANA SMITH, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

27.     Defendant's  Carex Step N' Rest walker,  as  researched,  tested,  developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and

marketed by Defendant, was defective in design and formulation in that when it left the hands of the Defendant's manufacturers and/or suppliers, it was unreasonably dangerous because it was not as safe as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

28.     Defendant's Carex Step N' Rest walker as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant, was defective in design and formulation in that when they left the hands of the Defendant's manufacturers and/or suppliers, the foreseeable risks associated with these products' reasonably foreseeable uses exceeded the alleged benefits associated with their design and formulation.

29.     Therefore, at all times relevant to this litigation, Defendant's Carex Step N' Rest walker, as re-searched, tested, developed, designed, licenses, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant, was defective in design and formulation, in one or more of the following ways:

a.     When placed in the stream of commerce, Defendant's Carex Step N' Rest walker was defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would expect.

b.     When placed in the stream of commerce, Defendant's Carex Step N' Rest walker was unreasonably dangerous in that it was hazardous and posed a grave risk of injury when used in a reasonably anticipated manner.

c.     When placed in the stream of commerce, Defendant's Carex Step N' Rest walker contained unreasonably dangerous design defects and was not reasonably safe when used in a reasonably anticipated or intended manner.

d.      Defendant did not sufficiently test, investigate, or study its Carex Step N'
Rest walker products and, specifically, the effectiveness and/or safety of its component
parts.

e.      Use of Defendant's Carex Step N' Rest walker presents a risk of harm that
outweighs a potential utility stemming from the use of the herbicide.

f.      Defendant knew or should have known at the time of marketing its Carex
Step N' Rest walker that ordinary use of this product could result in falls, fractures, and
other severe incidents and injuries.

g.      Defendant did not conduct adequate post-marketing surveillance of its
safety and mobility related products, including the subject Carex Step N' Rest walker.

h.      Defendant could have employed safer alternative designs and formulations.

30.      At all times relevant to this litigation, Plaintiff used Defendant's Roundup® Carex
Step N' Rest walker in an intended and reasonably foreseeable manner without
knowledge of its dangerous characteristics.

31.      Plaintiff could have not reasonably discovered the defects and risk associated with
Defendant's Carex Step N' Rest walker before or at time of use and incident.

32.      The harm caused by Defendant's Carex Step N' Rest walker far outweighed its
benefit, rendering Defendant's products dangerous to an extent beyond that which an
ordinary consumer would contemplate. Defendant's Carex Step N' Rest walker was and is
more dangerous than alternative products and Defendant could have designed its Carex
Step N' Rest walker to make it less dangerous.

33.      At the time the subject Carex Step N' Rest walker left Defendant's control, there
was a practical, technically feasible, and safer alternative design that would have

prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's product.

34.     To the extent necessary, Plaintiffs invoke the doctrine of strict product liability as set forth in Restatement (Second) of Torts, § 402A and Restatement (Third) of Torts: Product Liability, §§ 1-2.

35.     Defendant's defective design of its Carex Step N' Rest walker amounts to willful, wanton, and/or reckless conduct by Defendant.

36.     Therefore, as a result of unreasonably dangerous condition of its Carex Step N' Rest walker, Defendant is strictly liable to Plaintiff.

37.     The defects in Defendant's Carex Step N' Rest walker were substantial and contributing factors in causing Plaintiff's grave injuries, and if not for Defendant's misconduct and omissions, Plaintiff would not have sustained her injuries.

38.     As a direct and proximate result of Defendant placing its defective Carex Step N' Rest walker into the stream of commerce, Plaintiff suffered a fall and grave injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as economic hardship, including considerable financial expenses for medical care and treatment.

### SECOND CAUSE OF ACTION
### (Strict Products Liability – Failure to Warn)

39.     Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

40.     Plaintiff brings this strict liability claim against Defendant for failure to warn.

41.     At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting its Carex Step N' Rest walker, which is defective and unreasonably dangerous

to consumers, including Plaintiff because they do not contain adequate warnings or instructions concerning the dangerous characteristics of this product and specifically, the high risk of injury associated with component parts and/or wheels becoming loose. These actions were under the ultimate control and supervision of Defendant.

42.     Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Carex Step N' Rest walker, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and Defendant therefore had a duty to warn of the risks associated with the reasonably foreseeable uses (and misuses) of this product and a duty to instruct on the proper, safe use of these products.

43.     At all times relevant to this litigation, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure that its Carex Step N' Rest walker did not cause users and consumers to suffer from unreasonably and dangerous risks. Defendant had a continuing duty to instruct on the proper, safe use of these products. Defendant, as manufacturer, seller, or distributor of a wide range of safety and mobility-related products, is held to the knowledge of an expert in the field.

44.     At the time of manufacture, Defendant could have provided warnings or instructions regarding the full and complete risks of Carex Step N' Rest walker because it knew or should have known of the unreasonable risks of harm associated with the use of these products.

11

45.     At all times relevant to this litigation, Defendant failed to investigate, study, test, or promote the safety of its Carex Step N' Rest walker. Defendant also failed to minimize the dangers to users and consumers of its Carex Step N' Rest walker and to those who would foreseeably use or be harmed by Defendant's product, including Plaintiff.

46.     Despite the fact that Defendant knew or should have known that its Carex Step N' Rest walker posed a grave risk of harm, it failed to warn of the dangerous risks associated with their use. The dangerous propensities of its product, as described throghout, were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied, or sold the product and not known to end users and consumers, such as Plaintiff.

47.     Defendant knew or should have known that its Carex Step N' Rest walker created significant risks of serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to these products. Defendant has wrongfully concealed information concerning the dangerous nature of its Carex Step N' Rest walker and and further made false and/or misleading statements concerning the safety of this product.

48.     At all times relevant to this litigation, Defendant's Carex Step N' Rest walker reached the Plaintiff DIANA SMITH without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

49.     At all times relevant to this litigation, Plaintiff used Defendant's Carex Step N' Rest walker in its intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

50.     Plaintiff could not have reasonably discovered the defects and risk associated with Carex Step N' Rest walker before or at the time of his exposure. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendant.

51.     Defendant is held to the level of knowledge of an expert in the field.

52.     Defendant knew or should have known that the minimal and/or non-existent warnings disseminated with its Carex Step N' Rest walker were inadequate, but it failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses.

53.     The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled users like Plaintiff DIANA SMITH to utilize the products safely and with adequate protection. Instead, Defendant disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of its Carex Step N' Rest walker.

54.     To this day, Defendant has failed to adequately and accurately warn of the true risks of Plaintiff's injuries associated with the use of its Carex Step N' Rest walker.

55.     As a result of their inadequate warnings, Defendant's Carex Step N' Rest walker was defective and unreasonably dangerous when it left the possession and/or control of Defendant, was distributed by Defendant, and used by Plaintiff.

56.     Defendant is liable to Plaintiff for injuries caused by its failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of its Carex Step N' Rest walker and the risk associated with the use of this product.

57.     The defects in Defendant's Carex Step N' Rest walker were substantial and

contributing factors in causing Plaintiff's injuries, and if not for Defendant's misconduct

and omissions, Plaintiff would not have sustained his injuries.

58.     Had Defendant provided adequate warnings and instructions and properly

disclosed and disseminated the risk associated with its Carex Step N' Rest walker,

Plaintiff could have avoided the risk of developing injuries as alleged herein and Plaintiff

could have obtained an alternative product.

59.     As a direct and proximate result of Defendant placing its defective Carex Step N'

Rest walker into the stream of commerce, Plaintiff suffered a fall and grave injuries that

are permanent and lasting in nature, physical pain and mental anguish, including

diminished enjoyment of life, as well as economic hardship, including considerable

financial expenses for medical care and treatment.

## THIRD CAUSE OF ACTION
### (Strict Products Liability – Manufacturing Defect)

60.     All preceding paragraphs are re-alleged and incorporated herein.

61.     The product at issue contained a manufacturing defect which was a substantial

contributing factor in the harm suffered.

## FOURTH CAUSE OF ACTION
### (Negligence)

62.     All preceding paragraphs are re-alleged and incorporated herein.

63.     Defendants had a duty to exercise ordinary care in the design, testing, marketing

and distribution of the subject Carex Step N' Rest walker to ensure that it was not

unreasonably dangerous for its intended and foreseeable use.

64.     Defendants knew, or in the exercise of reasonable care should have known, that the subject Carex Step N' Rest walker was defective and unreasonably dangerous.

65.     Defendant had a duty to exercise reasonable care to design, test, manufacture, inspect, and market the subject Carex Step N' Rest walker so that it was reasonably safe when put to an intended, reasonably anticipated and reasonably foreseeable use, and so as not to subject its users to an unreasonable risk of harm.

66.     Defendant breached its duty to exercise reasonable care in the design, testing, inspection, manufacturing, and sale of the subject Carex Step N' Rest walker in multiple respects, including those stated in this complaint.

67.     The subject Carex Step N' Rest walker was not reasonably fit, suitable or safe for its intended and represented purpose.

68.     The subject Carex Step N' Rest walker was sold without adequate warnings to owners and foreseeable users of the unreasonably dangerous and defective conditions, despite the fact that Defendant knew, or in the exercise of reasonable care should have known, of the unreasonably dangerous and defective conditions.

69.     The subject Carex Step N' Rest walker was improperly and inadequately tested to determine the dangerous and defective condition of the overall system;

70.     Defendant failed to institute a recall and/or retrofit campaign for the purpose of remedying the unreasonably dangerous and defective conditions.

71.     Defendants breached their duty of ordinary care by placing the subject Carex Step N' Rest walker into the stream of commerce in a defective and unreasonably dangerous condition.

72.     Defendants' negligence was the proximate cause of the injuries sustained by Plaintiff DIANA SMITH.

**FIFTH CAUSE OF ACTION**
**(Breach of Express Warranty)**

73.     Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

74.     At all times relevant to this litigation, Defendant expressly represented and warranted to the purchasers of its Carex Step N' Rest walker, by and through statements made by Defendant in labels, publications, package insert, and other written materials intended to consumers and the general public, that this product was effective, fit, and proper for its intended use. Defendant advertised, labeled, marketed, and promoted its Carex Step N' Rest walker as a mobility and safety solution, representing the quality to consumers and the public in such a way as to induce their purchase or use, thereby making an express warranty that this product would conform to the representations.

75.     These express representations included incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of its Carex Step N' Rest walker. Defendant knew or should have known that the risks expressly included in Carex Step N' Rest walker warnings and labels did not and do not accurately and adequately set forth the risks of developing the serious injuries complained of herein. Nevertheless, Defendant expressly represented that its Carex Step N' Rest walker was safe and effective, that it was safe and effective for use by individuals such as Plaintiff, and/or that it was safe and effective as a four wheeled-walker.

76.     The representations about Carex Step N' Rest walker contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

77.     Defendant placed its Carex Step N' Rest walker into the stream of commerce for

sale and recommended their use to consumers and the public without adequately warning

of the true risks of developing the injuries associated with the use of this product.

78.     Defendant breached these warranties because, among other things, its Carex Step

N' Rest walker was defective, dangerous, unfit for use, did not contain labels representing

the true and adequate nature of the risk associated with their use, and was not

merchantable or safe for its intended, ordinary, and foreseeable use and purpose.

79.     Defendant has sole access to material facts concerning the nature of risks

associated with its Carex Step N' Rest walker and Defendant knew that consumers and

users such as Plaintiff could not have reasonably discovered that the risks expressly

included in his product's warnings and labels were inadequate and inaccurate.

80.     Plaintiff had no knowledge of the falsity or incompleteness of Defendant's

statements and representations concerning the Carex Step N' Rest walker, and she relied

to her detriment on these statements and representations.

81.     Had the warning and labels for the Carex Step N' Rest walker accurately and

adequately set forth the true risks associated with the use of such products, including

Plaintiff's incident and injuries, rather than expressly excluding such information and

warranting that the products were safe for their intended use, Plaintiff could have avoided

the injuries complained of herein.

82.     As a direct and proximate result of Defendant's wrongful acts and omissions,

Plaintiff suffered a fall and severe injuries that are permanent and lasting in nature,

physical pain and mental anguish, including diminished enjoyment of life, as well as

economic hardship, including considerable financial expenses for medical care and

treatment.

83.     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems proper and just. Plaintiff also demands a jury trial on the issues contained herein.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranties)

84.     Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

85.     Before the time that Plaintiff was exposed to the use of the aforementioned Carex Step N' Rest walker, Defendant impliedly warranted to its consumers and users, including Plaintiff, that this product was of merchantable quality and safe and fit for the use for which it was intended; specifically, as a safe four-wheeled walker.

86.     Defendant, however, failed to disclose that Carex Step N' Rest walker has dangerous propensities when used as intended and that the use of this product carries an increased risk of developing severe injuries, including Plaintiff's injuries.

87.     Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of Defendant and upon its implied warranties that the Carex Step N' Rest walker was of merchantable quality and for their intended purpose or use.

88.     The Carex Step N' Rest walker was expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

89.     Defendant intended that its Carex Step N' Rest walker be used in the manner in which Plaintiff in fact used them and Defendant impliedly warranted each product to be of merchantable quality, safe, and fit for this use, despite the fact that it was not adequately tested or researched.

90.     In reliance upon Defendant's implied warranty, Plaintiff used the Carex Step N'

Rest walker as instructed and labeled and in the foreseeable manner intended,

recommended promoted, and marketed by Defendant.

91.     Plaintiff could not have reasonably discovered or known of the risk of serious

injury associated with the Carex Step N' Rest walker.

92.     Defendant breached its implied warranty to Plaintiff in that its Carex Step N' Rest

walker was not of merchantable quality, safe, or fit for its intended use, or adequately

tested. The subject Carex Step N' Rest walker has dangerous propensities when used as

intended and can cause serious injuries, including those injuries complained of herein.

93.     The harm caused by Defendant's Carex Step N' Rest walker far outweighed the

benefit, rending the product more dangerous than an ordinary customer or user would

expect and more dangerous than alternative products.

94.     As a direct and proximate result of Defendant's wrongful acts and omissions

Plaintiff suffered a fall and severe physical and emotional injuries that are permanent and

lasting in nature, physical pain and mental anguish, including diminished enjoyment of

life, as well as economic hardship, including considerable financial expenses for medical

care and treatment.


**WHEREFORE**, Plaintiff seeks the following relief and recovery against all Defendants:

   A.    Compensatory damages to Plaintiff for past, present, and future damages,
   including, but not limited to pain and suffering, mental anguish, loss of enjoyment
   of life, together with interest and costs as provided by law;

   B.    Enhanced compensatory damages;

   C.    All ascertainable economic damages, including medical expenses, past and
   future loss of earnings and/or earning capacity;

D.     Costs, pre-trial interest, and attorneys' fees; and

E.     Such further relief as may be proper and just.

Respectfully submitted,

DIANA SMITH
By Her Attorneys,
SHAHEEN & GORDON, P. A.

Dated:  November 9, 2021                     /s/ Anthony M. Carr
                                             Anthony M. Carr (NH Bar # 267623)
                                             107 Storrs Street
                                             P. O. Box 2703
                                             Concord, NH 03302
                                             (603) 225-7262
                                             acarr@shaheengordon.com

                                             D. Michael Noonan (NH Bar # 8214)
                                             Shaheen & Gordon, P.A.
                                             P.O. Box 977
                                             Dover, NH 03821-0977
                                             (603) 749-5000
                                             mnoonan@shaheengordon.com